William J. Drohah, J.
The defendant moved to dismiss the cause of action at the end of the infant plaintiff’s proof and again after the whole case.
The witnesses for the plaintiff made a showing, prima facie, that there was a duty owed him. The testimony and exhibits demonstrated there was an apparent failure to properly maintain the defendant’s premises. It was also evidenced that the defendant failed to equip its property in accordance with specifications put on file in compliance with the Municipal Building Code.
By reason of those facts, a jury could have concluded this defendant was negligent and should respond in damages. After the whole case, this jury did exactly that.
The defendant asserted that it had no duty to the infant plaintiff under the law in New York. Its rejection of the infant plaintiff’s claim was because it assertedly had no legal obligation to trespassing youngsters of 15 years beyond the requirements put upon it by the law of trespass.
The defendant cites cases in the New York jurisdiction for its position. It places a special reliance on the alleged fact that there was nothing inherently dangerous in the fire escape mechanism.
The jury could well have found this fire escape at the time of the occurrence to be inherently dangerous. Ballentine’s Law Dictionary (3d ed., 1969) defines an “inherently dangerous article ” as one “ fraught with danger lying in the character and content of the article, albeit the disastrous consequences are caused immediately by an external force ”.
Ordinarily a fire escape is not an inherently dangerous article. Its basic design is to help the avoidance of danger. Nevertheless, it is always a form of ladder. It is usually hung onto a building, suspended above ground, and, in this manner, is available as a path of retreat, an escape from fire. It is patently not designed for everyday use. Those who must use a fire escape have to exercise care and caution. It is not without more than ordinary peril for most people who must use it. It is a last resource.
The fire escape attached to the defendant’s taxpayer property was suspended over a busy Bronx street. East Tremont Avenue between Marmion Avenue and Southern Boulevard was and is *343 fronted by tenements and stores. This buiding, 850-860 East Tremont Avenue, had loft tenants. At street level there was a series of shops. East Tremont Avenue is a major Bronx artery and at this location was heavily trafficked along its walks and roadways. Like so many of New York City’s streets, it is put to use by youngsters for play and games.
The defendant places a great deal of reliance upon Serapiglia v. Santini Bros. (306 N. Y. 877). In that case the fact pattern is markedly different. The fire escape there was at the time of the accident being used by an adult.
The case of Mendez v. Goroff (25 Misc 2d 1013, affd. 13 A D 2d 702) sets forth several different criteria for fixing liability in a case of this kind. The court there referred to a violation of a mandatory duty imposed upon a defendant by statute. While in this case there is no statute,, there is evidence of a violation of subdivision (e) of section 026-604.13 of the Administrative Code of the City of New York.
The Mendez decision (supra, p. 1017) also refers to a “ trap ” or “ inherently dangerous instrumentality ”.
The jury in this case was charged with respect to the defendant’s obligation to maintain its premises so as to properly safeguard an inherently dangerous instrumentality. The usual understanding of an inherently dangerous object obviously is that of gasoline, naptha, or the like. This fire escape, when built, might not have been inherently dangerous. Even although it did not nicely fit the .specifications set down for it, there was nothing about its nature to earn it such a description. However, the metamorphosis from a reasonably safe instrumentality to an inherently dangerous article was of a long duration. What had been for sometime prior to June 12, 1969, when the infant plaintiff' fell beneath it, a useful thing, had become a trap. The failure to maintain the cable and its appurtenances resulted in the cable being severed by the slight weight thrust upon it when the youth sought to retrieve his play toy.
A crawling caterpillar can do those things which nature has decreed a worm can do. When it changes into a butterfly it is something else again. When this steel ladder and iron cable had been changed by time and neglect, the change, ultimately, brought terrible injury to the plaintiff and, in the opinion of the jury, liability to the defendant. The court will not disturb that.
The defendant further refers to the fact that these premises are not on the public way. The accordion gate which young Martinez used to climb was across the front of the building *344 line at 850-860 East Tremont Avenue. It could be found that the protruding fire escape was outside the building line. It most certainly was above the sidewalk. The juxtaposition of the accordion gate and the ladder made them, for a youngster like Eomy Martinez, a part of his playground.
The trespass theory has been under assault since 1938, when Collentine v. City of New York (279 N. Y. 119) was decided. In that case, the infant tripped over an iron bar. To get to that bar the athletic young Collentine had to not only proceed across the defendant’s property line by unusual means but thereafter climb to the roof1 of a building closed to the public.
Judge Bergax, in writing for the majority in Patterson v. Proctor Paint & Varmsh Co. (21 N Y 2d 447, 450), asserted: “ But as a rigid concept by which all such cases are to be at once dismissed, the £ trespass ’ theory applied to children injured by dangerous conditions on land of owners having notice of the presence of children and the existence of danger has lost force as the law in New York has developed.”
This is a case where, if the plaintiff is deemed to be a trespasser, the ££ lost force ” alluded to by Judge Bergah has been made very evident by the jury.
The infant plaintiff was engaged in a game of ££ birdie ”, which was described by him and two of his playmates. The purpose of the game is to keep a bird or badminton shuttlecock from hitting the ground or sidewalk. The plaintiff and witness Carmen Lieba, with whom he was playing, stood a distance apart and hit the shuttlecock one to the other. After awhile the birdie nested in the slats of the fire escape above the street. The ensuing collapse of the fire escape from the slight pulling by the plaintiff brought a permanent paraplegic condition to this youngster. He will not have the use of1 his lower extremities for the rest off his life. Expert testimony described the . operations, sores, ulcers, bowel troubles, urinary problems, and loss of sexual capacity which will be part of his being the rest of his days. The jury, after hearing all that testimony and more, has fixed defendant’s liability in damages at $586,000, this sum to be apportioned between the infant ($420,000) and the plaintiff’s mother-guardian ad litem ($166,000). The court will not disturb that.
All motions denied.; 30 days’ stay.